IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                 OPINION AND ORDER

      Plaintiff,

                  12-cv-214-bbc

  v.

NORTHERN STAR HOSPITALITY, d/b/a
SPARX RESTAURANT; NORTHERN
STAR PROPERTIES; and NORTH
BROADWAY HOLDINGS, INC.,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

   The parties in this employment discrimination case submitted two preliminary disputes to the court for determination in a bench trial before the jury decides the question of liability: (1) whether, as plaintiff Equal Employment Opportunity Commission contends, defendants Northern Star Hospitality, d/b/a Sparx Restaurant, Northern Star Properties and North Broadway Holdings, Inc. were engaged in interstate commerce at the time a Saparx manager working for Sparx allegedly engaged in retaliation against a Sparx employee and (2) whether the three defendants are properly considered a "single employer" for liability purposes.  From the evidence presented at the August 12, 2013 court trial, I find that defendants Northern Star Hospitality and Northern Star Properties were engaged in interstate commerce at the time of the incident and that all three defendants can be

1

considered a single employer for liability purposes. Therefore, the trial on the merits of plaintiff's claim of retaliation will go forward on September 16, 2013

From the parties' stipulations and the trial evidence, I find the following relevant facts.

FACTS

The three defendants, Northern Star Hospitality Inc., d/b/a Sparx Restaurant (Hospitality), Northern Star Properties, LLC (Properties) and North Broadway Holdings, Inc. (Holdings), are corporate entities organized under Wisconsin law by Chris Brekken. Brekken is the sole member and manager of Properties and the sole shareholder, director and officer of the other two corporations. Both Hospitality and Holdings have operated restaurants on the property at 1827 N. Broadway Street in Menomonie, Wisconsin, owned by Properties. Hospitality operated a Green Mill franchise and later converted into an independent Sparx restaurant. After it closed down Holdings began operating a Denny's Restaurant franchise in the same building. Brekken is the sole shareholder of all three defendants, as well as several other corporations, including Rice Lake Harley Davidson and Geometrix.

Properties became the owner of the Broadway property in December 2004. It took out a mortgage on the property from S & C Bank in Eau Claire. In the same month, Brekken incorporated Hospitality, which obtained a Green Mill franchise at some time thereafter and operated it for several years. The first lease of record between Properties and

Hospitality is dated July 2009 and is to run for six years. (Defendants did not produce any earlier leases, although Brekken testified that they existed.)  Brekken signed a corporate resolution for Hospitality, authorizing the 2009 lease, and he signed a lease form on behalf of both parties, requiring Hospitality to pay an "amount sufficient as determined on an annual basis between Landlord and Tenant to pay the debt service and debt-related expenses on the Note to Anchor Bank . . . said Note having an approximate balance of 1,600,000 $ [sic] on or about 7/15/09."  Dfts.' Exh. #506.  In addition, Hospitality agreed to pay as additional rental an amount equal to the real estate taxes and operating expenses "per square foot of rentable area in the Building multiplied by the number of square feet of rentable area in the Premises," as well as the costs of insurance, improvements, maintenance and energy directly related to the building.

At some point, Hospitality rebranded the Green Mill restaurant as "Sparx" and eventually operated it as an independent restaurant with no ties to the Green Mill franchise. In 2011, Brekken started talks with the Denny's Corporation about opening a Denny's Restaurant to replace Sparx.  He told Denny's Corporation that he would be hiring managers from the existing pool of managers at Sparx.

On March 27, 2012, plaintiff filed this lawsuit.  On May 7, 2012, Brekken formed a Wisconsin limited liability corporation that he named North Broadway Holdings.  Sparx closed on June 3, 2012; Hospitality was dissolved the same day.  However, it continued making payments on Properties' mortgage and preparing for the new restaurant, which required gutting the building and cleaning up the site.  In addition, Hospitality paid for

corporate training by Denny's for the members of its management team, most of whom had worked for Sparx. In fact, about half the former Sparx employees became employees of Holdings, working at the Denny's Restaurant.

The new company, Holdings, did not take possession of the Denny's Restaurant until November 14, 2012. It did not assume any responsibility for the debts Hospitality had accrued during its existence, which apparently came primarily from "loans" from Geometix and Rice Lake Harley Davidson or directly from Brekken. (Brekken testified that he made "shareholder loans" to Hospitality, but his testimony left it unclear whether he made some of the loans out of his personal accounts or whether they were all from his wholly-owned corporations.)

In accordance with the terms of its lease, Hospitality made the mortgage payments on the property at 1827 North Broadway. After Hospitality was dissolved on June 3, 2012, its books showed that Properties owed money to Hospitality in each year from 2007 through 2011, increasing from about $14,000 at the end of 2007 to a high of $305,394 at the end of 2011. At the end of 2012, the books showed no debt owing to Hospitality from Properties. Defendants have not explained the disappearance of the debt or what it represented. The tax accountant who did the 2012 tax returns for all of Brekken's companies was never provided a note, loan document, interest charges or invoices in connection with the debts. (The accountant had done no work for the companies before the 2012 tax year.)

Hospitality had an operating loss of $320,000 in 2012. At the beginning of the 2012

calendar year, it had shown debts owed to it by other companies owned by Chris Brekken of $329,395. Earlier, in 2009, it lost $806,582. It had received loans from its only shareholder (Chris Brekken) of $704,640 and it owed Geometrix $527,986 and Rice Lake Harley $746,540. Defendants produced no corporate records showing the inter-corporation loans or how they were handled. When Hospitality shut down, it could not have paid a judgment. At the end of the year, the adjusting journal entries credited Hospitality with $329,395 that was offset by debits exceeding $2,000,000 for loans that had been converted to paid in capital. Tr. exh. #542.

Impoverished as it was on paper, even after it was dissolved, Hospitality continued to pay rent to Properties in the form of mortgage payments and make other payments in preparation for the new Denny's Restaurant until November 2012. For example, it paid "severance fees" to its employees who had worked at Sparx to clean up the old restaurant and strip out the fixtures and equipment, all of which were scrapped, and it paid the liquor license fees for the new Denny's Restaurant that would take the place of Sparx. On November 14, 2012, Holdings took possession of the building and started serving customers.

In 2008 and 2009, the restaurant's Anchor Bank checking accounts read "Northern Star Properties LLC Green Mill Restaurant dba,"as did the checks drawn on that account. Plt.'s Exh. #5. From January 1, 2009 to December 27, 2012, Hospitality had its own checking account with Royal Credit Union. Payroll records prepared by ADP showed the employer as Northern Star Properties. The work rules given to employees of Hospitality stated that the employees had to comply with the work rules of Northern Star Properties.

All three of the sequential restaurant operations at 1827 North Broadway purchased food from distributors located in Minnesota. It bought dishwashing supplies from Ecolab for which it was invoiced from Chicago, Illinois. The Schwarz Law Firm in Chanhassen, Minnesota, provided legal advice and representation to all of Chris Brekken's corporations or limited liability companies. Many checks were mailed between the restaurant in Menomonie and Geometrix in Minnesota, another corporation owned by Brekken, and a place where Brekken kept an office. The payroll processing for all incarnations of the restaurants was done in Minnesota by ADP. The Denny's Restaurant is a franchisee of Denny's Corporation, which is located in South Carolina. Holdings purchases food and supplies from South Carolina.

OPINION

A. Preliminary Motions

Plaintiff moved in limine for admission of deposition testimony, dkt. #96. That motion was granted at the start of trial because the testimony is that of either Rule 30(b)(6) witnesses (Chris Brekken and Randy Krautkramer) or of witnesses who live more than 100 miles from the courthouse (Kim Deasy, Chris Jarmuzek and Alex Rivet) and therefore admissible. (When the motion was filed, plaintiff asked for admission of deposition testimony of Michael Schwarz, who had been deposed as a 30(b)(6) witness, but who was also serving as trial counsel; the parties agreed that Schwarz's testimony would not be considered, so that part of the motion was withdrawn.)

Plaintiff moved in limine to preclude defendants from calling Lisa Donnerbauer (an employee of both Hospitality and Holdings), Donna Brey and Marian Drew (a former and a current employee of the EEOC) because they had not been identified in defendant's pretrial disclosures. Dkt. #115. That motion was granted on the ground that defendants' disclosure was untimely.

Defendants filed a motion in limine, dkt. #97, in which they argued that plaintiff had not complied with Title VII's conditions precedent before bringing suit. It is not clear what relief they sought; presumably, they wanted the court to dismiss the entire suit on this ground. However, defendants waited too long to raise the issue. When they answered the complaint, they merely set out a general denial, which was not adequate to alert plaintiff to their belief that the conditions precedent were not satisfied. A party denying that a condition precedent has been satisfied is required to assert the denial "with particularity." Fed. R. Civ. P. 9(c). Liberles v. Cook County, 709 F.2d 1122, 1125 (7th Cir. 1983); see also EEOC v. Service Temps Inc., 679 F.3d 323, 333 (5th Cir. 2012). Alternatively, defendants moved for leave to amend their complaint, but, again, they were too late. This motion was denied.

Defendants also filed a motion to strike portions of plaintiff's trial brief and for the imposition of sanctions on the ground that these portions contained scandalous matter bearing no relation to the controversy. Dkt. #139. That motion was denied because the allegedly scandalous material relates to matters that are in dispute in the case, such as whether Hospitality depleted its available assets by making payments on obligations of

Properties or North Holdings or whether Chris Brekken moved cash among his various corporations for improper purposes or without observing corporate formalities.

B. Substantive Issues

The parties raised two substantive issues: (1) whether each of the defendants was an entity engaged in an industry affecting commerce under 42 U.S.C. § 2000e(b) and (2) whether defendants Properties and Holdings can be liable under Title VII as employers, even though Dion Miller was employed only by Hospitality. Resolution of the first issue is straightforward, although the path to the working definition of an "industry affecting commerce" is a winding one. The definition in 42 U.S.C. § 2000e(h) refers the reader to the Labor Management Reporting and Disclosure Act, 29 U.S.C. §§ 401-531, which in turn incorporates the definition of "affecting commerce" set forth in the Labor Management Relations Act and the Railway Labor Act. The Railway Labor Act defines the term as "in commerce or burdening or obstructing commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." 29 U.S.C. § 152(7). In practice, this definition is easy to meet. It covers situations in which a defendant "merely used goods that at some point in time moved through interstate commerce." Johnson v. Apnar Ghar, Inc., 330 F.3d 999, 1003 (7th Cir. 2003).

In this case, the interstate effect is evident. Properties owns land and a building it rents to restaurant operators, who buy food and supplies from other states. The value of the property is increased by its being within 40 miles of Minneapolis and St. Paul and near an

exit off the interstate. Its legal counsel is located in Minnesota. In at least 2008 and 2009, it was paying for expenses incurred by Hospitality, including payroll services performed in Minnesota, as shown by the Anchor Bank checks issued under its name. Moreover, as I find and conclude later in this opinion, Properties has such a unity of interest and ownership with the other two defendants that their activity in interstate commerce suffices to show that Properties was an entity engaged in an industry affecting interstate commerce at the time of the alleged illegal retaliation.

As for Hospitality, it bought food and supplies from interstate distributors, used the services of lawyers and a payroll service located in Minnesota and paid to have management employees attend training in South Carolina. Holdings is doing the same. In addition, Holdings' authority to operate its Denny's Restaurant comes from a South Carolina corporation with whom it communicates on a regular basis and from whom it buys food and supplies. It is engaged in interstate commerce at this time, although it was not in existence when the alleged retaliation took place.

The second, somewhat less straightforward issue is whether plaintiff can proceed against the two defendants that did not have a direct employment relationship with Dion Miller, the employee allegedly retaliated against by defendant Hospitality. Affiliates of one corporation can be held liable for that corporation's illegal acts if corporate formalities have been ignored and the actions of one company accrue to another. Worth v. Tyer, 276 F.3d 249, 260 (7th Cir. 2001). Alternatively, a successor company may be liable if it knew of its predecessor's liability, knew the precise extent of that liability and knew that the predecessor

itself would not be able to pay a judgment obtained against it. Id. (citing EEOC v. Vicitech, 842 F.2d 936, 945 (7th Cir. 1988)). Finally, an affiliated corporation "forfeits its limited liability when it takes actions for the express purpose of avoiding liability under the discrimination laws or where the affiliate corporation might have directed the discriminatory act, practice, or policy of which the employee is complaining." Id. (citing Papa v. Katy Industries, Inc., 166 F.3d 937, 941 (7th Cir. 1999)).

Plaintiff asserts that all defendants were liable for any award that might be made to Miller either because the corporate veil among defendants had been pierced or because Holdings was a successor company to Hospitality, knew about its predecessor's liability, knew the precise extent of that liability and knew that Hospitality would be unable to pay a judgment against it. For its part, defendants contend that plaintiff cannot prove that any of the other defendants may be held liable because it has not shown the presence of the seven factors that are a prerequisite for such liability, including common management, centralized control of labor, common bank accounts, separate corporate resolutions and an indication that one corporation directed the discriminatory actions. Their only support for this argument is an unpublished decision by this court, Faas v. Aramia, Ltd., 2000 WL 34239128 (W.D. Wis. 2000), involving quite different facts. To the extent that this argument is based upon the "integrated enterprise" approach that the Court of Appeals for the Seventh Circuit espoused at one time, e.g., Rogers v. Sugar Tree Products, Inc., 7 F.3d 577, 582 (7th Cir. 1993) (applying four-factor test focusing on the interrelation of operations, common management, centralized control of labor relations and personnel and

common ownership), the court has abandoned that approach. Worth, 276 F.3d at 260 ("integrated enterprise" test too amorphous to be applied consistently).

"Piercing the corporate veil" usually refers to determining whether an individual should be held liable for the acts or debts of a corporation.

> The general rule is that a corporation is treated as a legal entity distinct from its members and is not liable for the personal debts of a shareholder. However a shareholder's act will be treated as a corporate act and the existence of the corporation as an entity apart from the natural persons comprising it will be disregarded, if corporate affairs are organized, controlled and conducted so that the corporation has no separate existence of its own and is the mere instrumentality of the shareholder and the corporate form is used to evade an obligation, to gain an unjust advantage or to commit an injustice.

Wiebke v. Richardson & Sons, Inc., 83 Wis. 2d 359, 363, 265 N.W.2d 571, 573 (1978). See also Anderson v. Abbott, 321 U.S. 349 (1944) ("there are occasions when the limited liability sought to be obtained through the corporation will be qualified or denied"); Secon Service System, Inc. v. St. Joseph Bank and Trust Co., 855 F.2d 406, 412-15 (1988). Matter of Kaiser, 791 F.2d 73, 74-77 (7th Cir. 1986); Olen v. Phelps, 200 Wis. 2d 155, 546 Wis. 2d 176 (1996) (corporation is mere alter ego of its owner when owner treats corporate assets as his own). With affiliated companies, one of them may forfeit its limited liability through "piercing the corporate veil," which requires showing that there is "such unity of interest and ownership between the affiliates that the separate personalities no longer exist; and second, circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.'" Worth, 276 F.3d at 259-260 (quoting Van Dorn Co. v. Future Chemical & Oil Co., 753 F.2d 565, 569-70 (7th Cir. 1985)).

In this case, the parties have focused on whether the three defendants observed the corporate formalities sufficiently to protect any one of them from liability for the acts of the others. The facts show that they did not. All of them were controlled entirely and solely by Chris Brekken, who rarely observed corporate formalities when transferring debts or assets from any one corporation to another or attributing responsibilities to any particular corporation. For example, he listed Properties as the corporate entity for the Green Mill restaurant on an Anchor Bank checking account used for payroll and other expenses for the restaurant for at least two years (2008-09) but now says that the restaurant was the sole responsibility of Hospitality. Although Hospitality had $305,395 in debts owed it by Properties as of the end of 2011, defendants adduced no evidence that Properties ever paid any interest on the debts to Hospitality or, so far as the evidence shows, paid them off. They were simply credited to Hospitality as part of an adjustment of journal entries and set off against loans and notes payable to Geometrix, Chris Brekken and Eric Sampson (whose role in this case has not been disclosed by the parties). There is no evidence of any note, loan documentation or invoices relating to the "loans" over the years in which they were purportedly made. When one of Brekken's corporations required an infusion of cash, Brekken simply transferred money from another one of his solely-owned corporations or possibly out of his own pocket. (The record is unclear in this respect.)

Moreover, although Hospitality was dissolved formally in early June 2012, it continued to act as an ongoing entity, undertaking work to make the restaurant building ready for its new life as a Denny's Restaurant, incurring costs for that work, and continuing

to make mortgage payments to Properties and pay for insurance. At the same time, it paid for the costs of the liquor license transfer from Sparx to the new Denny's Restaurant and it paid for the cost of extensive training by Denny's Corporation for the management staff at the new restaurant. In short, the numerous instances in which corporate formalities were overlooked supports a conclusion that the "corporate veil" has been pierced and that Properties and Holdings can be held equally responsible for any liability that a jury might assess against Hospitality.

Alternatively, the facts are sufficient to find that Holdings has successor liability for any award against Hospitality for illegal retaliation. No one has suggested that it paid Hospitality for the assets it acquired, but it moved into a building prepared for it by Hospitality to the specifications of Denny's Corporation, hired more than half of the employees previously employed by Hospitality, hired Hospitality's management team, the members of which had been trained by Denny's at Hospitality's expense, and used the same work rules for the employees that Hospitality had used at Sparx. In other words, Holdings carried on the restaurant business at 1827 North Broadway, albeit with a different name and theme. It knew about Hospitality's potential liability for the retaliation against Miller; and it knew, because Brekken knew and Brekken was the only owner or officer of Holdings, that Hospitality would not be able to pay any judgment obtained against it. EEOC v. Vucitech, 842 F.2d 936, 945 (7th Cir. 1988) ("When the successor company knows about its predecessor's liability, knows the precise extent of that liability, and knows that the predecessor itself could not be able to pay a judgment obtained against it, the presumption

should be in favor of successor liability"). See also Fall River Dyeing & Finishing Corp., 482 U.S. 27 (1987) (discussing successorship in connection with successor's continued obligation to recognize and bargain with union).

I find and conclude that plaintiff has shown that the three defendants forfeited their limited liability and that the actions of any one of the three defendants accrue to the others, so that all will be liable for any judgment awarded against Hospitality for its alleged retaliation against Dion Miller. In addition, I conclude that Holdings is a successor to Hospitality and that it can be held liable for the allegedly retaliatory actions of Hospitality with respect to Dion Miller.

ORDER

IT IS ORDERED that

1. Plaintiff Equal Employment Opportunity Commission's motion for admission of the deposition testimony of Chris Brekken, Randy Krautkramer, Kim Deasy, Chris Jarmuzek and Alex Rivet, dkt. #96, is GRANTED;

2. Plaintiff's motion to bar defendant from calling Lisa Donnerbauer, Donna Brey and Marian Drew, dkt. #115, is GRANTED;

3. Defendants Northern Star Hospitality, d/b/a Sparx Restaurant, Northern Star Properties and North Broadway Holdings, Inc.'s motion to dismiss this suit on the ground that plaintiff failed to comply with Title VII's conditions precedent or in the alternative to grant them leave to amend their answer, dkt. #97, is DENIED;

4. Defendants' motion to strike portions of plaintiff's trial brief and award sanctions, dkt. #138, is DENIED;

5. Defendants' motion to dismiss this case because plaintiff has not shown that defendants were entities engaged in an industry affecting commerce under 42 U.S.C. § 2000e is DENIED; and

6. Defendants' motion to dismiss this case as to defendants Northern Star Properties and North Broadway Holdings, Inc. on the ground that plaintiff has not shown that these defendants have any liability for the allegedly retaliatory action of defendant Northern Star Hospitality is DENIED.

Entered this 20th day of August, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge