IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                      OPINION AND ORDER

          Plaintiff,

                      12-cv-214-bbc

    v.

NORTHERN STAR HOSPITALITY d/b/a
SPARX RESTAURANT; NORTHERN
STAR PROPERTIES, LLC; AND
NORTH BROADWAY HOLDINGS, INC.,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This civil action is before the court on post trial briefing by the parties on plaintiff Equal Employment Opportunity Commission's requests for back pay, front pay and injunctive relief on behalf of Dion Miller, who was the subject of a retaliatory discharge by defendants Northern Star Hospitality, d/b/a Sparx Restaurant, Northern Star Properties, LLC and North Broadway Holdings, Inc. Defendants oppose the grant of any injunctive relief or front pay. In addition, they have moved under Fed. R. Civ. P. 60(b)(3) and (d)(3) to be relieved of any liability for the jury's award of $15,000 for damages incurred by Miller on the ground that the award was based on perjured testimony by Miller.

      Plaintiff's request for injunctive relief will be granted because the request is closely tailored to defendants' illegal act of retaliatory termination and properly limited in scope and

1

duration. Miller is not entitled to front pay because plaintiff has neither shown how long he would have continued to work for defendants had he not been terminated nor produced evidence of a proper discount rate to apply to any calculation of front pay. Finally, defendants' motion for relief from liability for the jury's award of damages will be denied because defendants have not shown that Miller's testimony about his child support payments was false or that it went to the heart of the issue to be decided.

BACKGROUND

Plaintiff brought this action in 2012, alleging that a manager working for defendants had subjected Dion Miller, a former employee, to racial harassment and that defendants failed to take appropriate action in response. Plaintiff also contended that defendants retaliated against Miller by firing him when he complained about the harassment. At summary judgment, I dismissed the harassment claim but allowed the case to go forward on the retaliation claim.

An evidentiary hearing was held before trial to determine (1) whether defendants were engaged in interstate commerce at the time of the alleged harassment and (2) whether the three defendants were properly considered a "single employer" for liability purposes. Both issues were decided in plaintiff's favor.

At the September 2013 jury trial, Dion Miller testified that in September 2010, he held the position of assistant kitchen manager. He was earning $14 an hour and was responsible for ordering products for the restaurant.

When Miller reported to work on October 1, he saw that someone had posted a picture of an African-American actor, Gary Coleman, below a notice to employees about rotating food in the cooler. Over the notice was a defaced dollar bill on which someone had drawn a noose around George Washington's neck and a swastika on his forehead; also on the bill were drawings of a man on horseback and a "hooded klansman" with KKK written on his head. When the front-of-the-house manager arrived, Miller asked her to look at the posting; she said she knew nothing about it. Miller asked his direct supervisor about the posting as soon as the supervisor arrived at work. The supervisor removed the dollar bill and substituted a picture of another television star (a white man) under the reminder to rotate the food. In subsequent days, the kitchen supervisor criticized Miller's work several times, although he had never done so before Miller complained about the posting. Another manager met with Miller and told him that his work was not up to his usual standards and that his attitude was poor. Three weeks after the incident, Miller was fired. Although defendants had a progressive discipline policy in place, they did not follow it when terminating Miller.

At trial, Miller testified about the emotional effects of his termination. He said he "felt terrible" about having to tell his girlfriend and his daughter about the loss of his job; he and his girlfriend had to put off their plans to have a child; he and the mother of his daughter experienced a strain in their relationship because he was unable to pay child support to her, trial tr., dkt. #198, at 3-45; and he felt "less than a man" because he was no longer the primary bread winner. Id. He found it difficult to look for work day after day

3

without success and he went through "a little bit of a depression," put on weight and did not go out much. Id. at 3-46.

In her closing argument, plaintiff's counsel argued that Miller had suffered depression, that his termination had affected his family and his family planning, that it caused him to cry, to feel bad about his life and it "turned his whole world upside down." Id. at 3-96-97. She did not say anything about the strain placed on his relationship with the mother of his daughter.

The jury found that when Dion Miller complained about the allegedly racial posting at his workplace, he was acting on a reasonable, good faith belief that the posting was racially offensive. It found also that defendants would not have terminated him from his cook's job had he not complained about the posting. A day later, the jury awarded him $15,000 in compensatory damages, but refused to award any punitive damages, despite its finding that defendants had acted with reckless disregard for Miller's federal protected rights.

OPINION

The jury's verdict makes it necessary to decide (1) the amount of back pay to which Miller is entitled; (2) whether Miller is entitled to any front pay and if so, how much; (3) whether plaintiff's motion for injunctive relief should be granted; and (4) whether defendants are entitled to relief from the damages award.

A. <u>Relief from Judgment for Damages under Fed. R. Civ. P. 60(b)(3) and (d)(3)</u>

Defendants do not take issue with the jury verdict as it relates to liability, but they do object to the $15,000 compensatory damages award. They have filed a motion for relief from judgment under Fed. R. Civ. P. 60(b)(3) and (d)(3), both of which relate to fraud. (Subsection (b)(3) refers to fraud by an opposing party; subsection (d)(3) refers to "fraud on the court.") Although no judgment has been entered in this case, I will take up the matter as it relates to the legitimacy of the damages award.

Since the trial, defendants have found evidence that in their opinion shows that Miller was the subject of seven different orders to show cause relating to his non-payment of support for his daughter. They argue that this is proof he was lying when he testified he had a good relationship with his daughter's mother before his termination. Plaintiff does not agree. First, it points out that the court records on which defendants rely relate to Miller's younger daughter, who is the child of a different woman and not the child about whom he testified at trial. Second, the court records are not reliable evidence because they include little information and what they do provide is devoid of context. Third, Miller's testimony related to his subjective thoughts and feelings about his relationship with the mother of his older daughter. Plaintiff adds that defendants had an opportunity to examine Miller about his claims for emotional distress when they deposed him, but never took advantage of it.

Defendants' showing falls far short of proof that Miller committed perjury requiring relief from the jury's award. To make such a showing, defendants would have to show not only that Miller's testimony was intentionally false but that his testimony went to the heart

5

of the issue before the court. His relationship with the mother of his daughter was only one of several matters that he testified had caused him distress and plaintiff's counsel never even mentioned it in her closing argument. It was not so critical to the jury's decision as to support a damages award by itself. Certainly, it did not go to the "the heart of the matter," which is what is required to merit reopening of a judgment under Rule 60(b)(3). Metlyn Realty Corp. v. Esmark, 763 F.2d 826, 832 (7th Cir. 1985) ("an adverse party's fraud or subornation of perjury permits relatively free reopening of the judgment when the perjury goes to the heart of the issue" (citing Peacock Records, Inc. v. Checker Records, Inc., 365 F.2d 145, 147 (7th Cir. 1966), and Harre v. A.H. Robins Co., 750 F.2d 1501, 1503 (11th Cir. 1985)). The motion for relief from the jury's award of damages under Rule 60(b)(3) and 60(d)(3) will be denied.

B. Back Pay Award

Defendants have several objections to the back pay award, one of which is that Miller is not entitled to back pay for the period in which the Sparx Restaurant was closed for conversion to a Denny's franchise. According to the trial record, however, defendants kept certain employees on their payroll during the conversion period, using them for help with demolition and clean up. It was defendants' burden to show that Miller would not have been kept on for this purpose and they did not offer any evidence to show that he would not have been, so I must assume he would have been retained.

Defendants criticized the efforts that Miller put into finding a replacement job, noting

that he looked for jobs only one to two days a week and that he never submitted a résumé or letter of recommendation from former employers. Miller started looking for work the week he was terminated and applied for two or more jobs every week thereafter. He drove up to 60 miles from home to apply for jobs and he testified that he could not afford to do more job hunting. Although he limited his search to restaurant jobs for a long time, that limitation does him bar him from obtaining back pay. Victims of retaliatory discharges are not required to look for jobs in other positions or in other lines of work. Ford Motor Co. v. EEOC, 458 U.S. 219, 231 (1982). Defendants have not shown that Miller failed to exercise reasonable diligence in his efforts to find work.

Defendants object to plaintiff's failure to make allowance in its proposed back pay award for holidays or days of sick leave that Miller would have taken. Defendants did not put in any evidence about the number of sick days and holidays Miller had taken in the past or even the average number of days that other kitchen crew members took. In the absence of such evidence, it would be improper to speculate about whether Miller would have taken any days off and, if so, how many he would have taken.

Defendants have shown no reason why Miller should not be awarded the damages plaintiff is requesting: $39,775.59 in back pay through August 31, 2013, plus $19.20 per week (the difference between what he earned at Sparx and what he is able to earn now) through the date of judgment. The interest due on the award will be added to that amount, with the interest calculated in the same manner and at the same rate used by the Internal Revenue Service for calculating interest on unpaid taxes. 26 U.S.C. § 6621. Defendants

7

have not objected to the use of this interest rate.

The award will not be taxed because Miller will be taxed on the award when he receives it. However, I will grant plaintiff's request for a 15% increase in the back pay award, to account for the fact that Miller will have to pay taxes on a lump sum award that he would not have had to pay had he received the money spread out over the more than three years since he was terminated improperly.

### C. Front Pay Award

Defendants object to any award of front pay on the ground that plaintiff failed to give the court "'the essential data necessary to calculate a reasonably certain front pay award,'" dfts' br., dkt. #200, at 23 (quoting McKnight v. General Motors Corp., 973 F.2d 1366, 1372 (7th Cir. 1992)). (Defendants do not argue that Miller should have sought reinstatement.) This "'includes the amount of the proposed award, the length of time the plaintiff expects to work for the defendant and the applicable discount rate.'" Id.

Plaintiff has set forth the amount of the proposed award, but has said nothing about how long Miller would have expected to work for defendants or about the applicable discount rate. Without any evidence on these factors, plaintiff has failed to sustain its request for a front pay award to Miller. Bruso v. United Airlines, Inc., 239 F.3d 848, 862 (7th Cir. 2001).

D. <u>Injunctive Relief</u>

As injunctive relief, plaintiff asks the court to (1) to bar defendants from discharging employees in retaliation for complaints about racially offensive postings in defendants' workplace; (2) require defendants to adopt policies that explicitly prohibit actions made unlawful under Title VII; (3) require defendants to adopt an investigative process with regard to discrimination claims; and (4) require them to provide annual training to Chris Brekken and other managers regarding Title VII. Defendants object to this request, arguing that the proposed injunctions are nothing more than telling defendants to "obey the law" and that such injunctions are not favored by the law. In addition, defendants say that plaintiff does not come before the court with clean hands: it did not serve the Notice of Claim on defendants within ten days of Miller's charge of discrimination, it made a determination of reasonable cause without interviewing key witnesses, it failed to make a Determination on Reasonable Cause within 120 days from the filing of the Charge of Discrimination, it did not file this civil action within 180 days of the filing of the Charge of Discrimination, it failed to work to eliminate the alleged wrongful conduct by engaging in good faith conciliation and it based its damage request on Miller's misleading and perjured testimony.

It is too late for defendants to raise a claim of "unclean hands"; the time for doing so was at the outset of the litigation. At this junction, plaintiff's alleged procedural failings are irrelevant to the question on injunctive relief. The question for defendants is whether injunctive relief is unnecessary. Defendants did not show that it is, so I will consider the

nature, scope and length of plaintiff's proposal to determine whether the requested injunctive relief is proper.

Defendants are correct when they say that the courts do not favor injunctions that merely require the subject to obey the law, but plaintiff's claim for relief does not fall into that category. Its first request is directed to barring the three defendants from discharging a person in retaliation for complaints about racially offensive postings in defendants' workplace. It is limited in time to three years. Defendants characterize this proposal as an overly broad injunction not to discharge employees for unlawful reasons, but the characterization is unjust. The injunction is narrowly framed and tied to the particular unlawful conduct in this case. Moreover, it would last for only three years, so it escapes the criticism that rightfully attaches to injunctions of unlimited length. E.g., EEOC v. AutoZone, Inc., 707 F.3d 824, 844 (7th Cir. 2013) (reversing lower court's imposition of permanent injunction requiring defendant to make accommodations for persons covered by Americans with Disabilities Act).

Plaintiff's second request is for an injunction requiring the adoption of a workplace policy explicitly barring retaliation for opposing matters made unlawful under Title VII. Such an injunction would cover discharges for many more things than objecting to the posting of a racially discriminatory posting, but it is not so broad as to be objectionable. Again, defendants have not shown that this injunction is unnecessary. Although defendants no longer employ many of the people involved in the racial posting incident, Christopher Brekken remains the dominant person in each of the defendant organizations and his

testimony that he did not think the posting of the dollar bill violated any workplace policy indicates that he has an incomplete understanding of the concept of racial discrimination.

Plaintiff's third request is for an injunction requiring defendants to adopt a complaint and investigative procedure for internal complaints of retaliation. Defendants do not deny the merits of the request, but contend that no injunction is needed because the topic is covered by the materials now in use by Denny's, the franchisee. However, a review of Denny's Employee Handbook, trial exh. #12, shows gaps in procedures for both complaints and investigations. The section on employee complaints of harassment says only that such complaints should be made to "someone in management" or by contacting "anyone at Denny's company offices." Id. at 8 (Sparx 963).

Finally, plaintiff asks for annual training on rights and responsibilities under Title VII, including the provisions on retaliation, for Christopher Brekken and for all managers, including supervisors, working for defendants. Although defendants say that the injunction is unnecessary because it duplicates training already provided by Denny's, they do not say that Christopher Brekken has received the training.

I conclude that the limited injunctive relief sought by plaintiff is appropriate to the violation of law in this case. It is not simply an "obey the law" injunction, but tailored to the deficiencies identified in defendants' operations and it is limited in duration.

ORDER

IT IS ORDERED that plaintiff Equal Employment Opportunity Commission's

request for back pay and injunctive relief is GRANTED and its request for front pay is DENIED; the motion filed by defendants Northern Star Hospitality, d/b/a Sparx Restaurant, Northern Star Properties, LLC and North Broadway Holdings, Inc. under Fed. R. Civ. P. 60(b)(3) and (d)(3) for relief from judgment (construed as a motion to overturn the jury's award of damages to Dion Miller), dkt. #207, is DENIED.

FURTHER, IT IS ORDERED that

1. defendants are enjoined

   a. from discharging employees in retaliation for complaints about racially offensive postings in defendants' workplace;

   b. from failing to adopt policies that explicitly prohibit actions made unlawful under Title VII;

   c. from failing to adopt an investigative process with regard to discrimination claims; and

   d. from failing to provide annual training to Chris Brekken and other managers, including supervisors, regarding Title VII; and

2. Dion Miller is awarded $15,000 for emotional damages;

3. Dion Miller is awarded back pay in the amount of $39,775.59 for the period through August 31, 2013 and $422.40 for the period from September 1, 2013-January 31, 2014, plus interest of $2,2565.29 for the period through August 31, 2013 and additional interest for the period from September 1, 2013-January 31, 2014, which plaintiff is to calculate using the Internal Revenue Service interest rate and submit to the court for approval

no later than February 3, 2014; defendants may have until February 13, 2014 in which to raise any objections they have to the interest calculation; and

    4. Plaintiff is awarded an additional amount of back pay equal to 15% of the back pay award, including interest, to reimburse him for the extra taxes he will owe on the lump sum payment he is to receive, to be determined by the court once the interest calculation has been approved.

    Entered this 27th day of January, 2014.

                                     BY THE COURT:
                                     /s/
                                     BARBARA B. CRABB
                                     District Judge