IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

              OPINION AND ORDER

      Plaintiff,

                12-cv-214-bbc

    v.

NORTHERN STAR HOSPITALITY
D/B/A SPARX RESTAURANT;
NORTHERN STAR PROPERTIES, LLC;
AND NORTH BROADWAY HOLDINGS,
INC.,

      Defendants,

   and

DAIRY STATE BANK,

      Garnishee Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In 2012, plaintiff Equal Employment Opportunity Commission brought a lawsuit against defendants Northern Star Hospitality, d/b/a Sparx Restaurant, Northern Star Properties, LLC and North Broadway Holdings, Inc., contending that defendant Hospitality had discriminated against a Sparx employee, Dion Miller, and retaliated against him when he complained about the discrimination.  Plaintiff prevailed, obtaining an award of nearly $65,000 in damages.  The verdict and award were affirmed by the Court of Appeals for the Seventh Circuit in January 2015.  Since then, plaintiff has tried unsuccessfully to collect the

1

judgment it obtained on behalf of Miller; to date, defendants have thwarted all of plaintiff's efforts, with only very small exceptions, including the garnishment of two bank accounts held by defendants that yielded $3453.78.  Plaintiff has now moved for final disposition of a writ of garnishment to a third bank, Dairy State Bank, which has $14,908.18 on deposit for defendant Properties.  Dkt. #302.

Defendants have failed to show any reason why the $14,908.18 on deposit in the Dairy State Bank should not be turned over to plaintiff for partial satisfaction of the judgment.  Defendants say that the funds on deposit belong to Rice Lake Harley-Davidson, Inc., another corporation owned by Christopher Brekken, who is also the sole shareholder of each of the defendant corporations, and were deposited as a loan to defendant Properties. However, they have not explained (1) why defendant Properties has any standing to object, after having been dissolved as of September 25, 2015, Decl. of Vasichek, dkt. #304, exh. 304-8, at 2; (2) why, even if it had not been dissolved, it would have standing to assert a separate corporation's interest in the account; or (3) why either Rice Lake's or defendant Properties'purported interest in the funds would trump plaintiff's when § 3713(a) gives priority in collection to the federal government.  Accordingly, I will enter the final order of disposition as to the writ of garnishment directed to Dairy State Bank.


FACTS

After first bringing suit against defendant Northern Star Hospitality, d/b/a/ Sparx Restaurant, alleging that it had subjected employee Dion Miller to discrimination and

retaliated against him for complaining about the discrimination, plaintiff Equal Employment Opportunity Commission amended its complaint to add as defendants, Northern Star Properties, LLC and North Broadway Holdings, Inc., alleging that the three defendants had been a single employer continuously engaged in an industry affecting commerce.  After summary judgment was granted to defendants on the claim of discrimination, the case went to the jury on plaintiff's claim of retaliation.  At a pretrial hearing, I made the determination that the three defendants were properly considered as a single employer for liability purposes because all of them, together with Christopher Brekken, the sole shareholder of each corporation, had failed to observe corporate formalities or to account properly (if at all) for each corporation's assets and liabilities.  Op. & Order, dkt. #152.

The jury awarded Miller damages of $15,000, which grew to almost $65,000 after the addition of back pay, interest and an amount reflecting the extra taxes he will owe on the lump sum payment.  In March 2015, the Court of Appeals for the Seventh Circuit affirmed the verdict, damages award and the finding that the three defendants were a single employer for liability purposes.  Equal Employment Opportunity Commission v. Northern Star Hospitality, Inc., 777 F.3d 898 (7th Cir. 2015).

Once the verdict was affirmed, plaintiff began efforts to collect on its judgment, starting with service of interrogatories.  In May 2015, it filed its first motion to compel, dkt. #238, alleging that defendants had refused to answer certain interrogatories seeking information about the defendants' assets and refused to make available to plaintiff the documents they had said they would provide in lieu of answers to the interrogatory

questions.  Mot. to Compel, dkt. #238.  Defendants defended their delay in providing discovery of their finances on the ground that all of the information had been in the hands of their accountants and could not be turned over until the accountant was finished with it. Aff. of dfts.' counsel, Michael Schwartz, dkt. #245.  However, defendants had never asked for an extension of time or explained why they could not turn over photocopies of the financial information.  After a hearing, I granted plaintiff's motion to compel defendant Holdings to turn over documents responsive to plaintiff's interrogatories and awarded attorney fees to plaintiff.  Dkt. #258.

Also in May 2015, plaintiff filed a motion to garnish a bank account at Peoples State Bank.  Dkt. #241.  By the time plaintiff's motion for a writ of garnishment had been granted, the Peoples Bank account had a balance of only $3431.72.  Defendants told plaintiff that a company named Geometrix Co. had a perfected secured debt exceeding whatever balance had been in the account and that its debt had priority to plaintiff's judgment.  Schwartz aff., dkt. #249.  (Schwartz did not mention that Geometrix Co. is another corporation of which Christopher Brekken is the sole shareholder.)

On August 8, 2015, plaintiff sought a second writ of garnishment, directed this time to Central Bank.  The motion was granted on August 26, 2015.  Dkt. #282.  On the same day, I held a hearing at which I directed defendants to take certain steps to learn the value of all real and personal property, produce information on new bank accounts, complete their answer to one unanswered interrogatory, produce supplemental information and provide plaintiff a proposed payment plan if they were unable to make full payment of the judgment.

4

Dkt. #285. At the hearing, defendants' counsel told the court "absolutely that no money has been taken out of the corporation by Chris Brekken or any of his related entities." Aug. 26, 2015 hrg. trans., dkt. #286, at 11. He also admitted that the company had been moving bank accounts "so that they can pay employees and so that they can pay their employment taxes." Id. at 10. After receiving the writ of garnishment in early September, Central Bank advised plaintiff that defendants' account had a balance of $26.03. Dkt. #289.

Plaintiff next sought a writ of garnishment for a third bank, Dairy State Bank, dkt. #292. When plaintiff learned of the account, it had a zero balance. When plaintiff filed its garnishment action against the bank, it reported having a balance of $14,908.18. However, defendants' counsel filed an affidavit to the effect that the account represented funds belonging to Rice Lake Harley-Davidson. (This corporation is also controlled by Christopher Brekken.) On behalf of defendant Properties, counsel maintained that the account was beyond plaintiff's reach because on September 1, 2015, the bank had entered into an agreement with Rice Lake and defendant Properties under Wis. Stat. § 409.314(1), which allows perfection of a security interest in a deposit account by control of the collateral under Wis. Stat. § 409.104. Finding this argument unpersuasive because defendant Properties had not shown why it had standing to assert the rights of Rice Lake Harley, I granted plaintiff's motion for a writ of garnishment directed to Dairy State Bank. Dkt. #296.

Defendants asked for yet another hearing at which they could "respond to the EEOC's allegations and misstatements," dkt. #306, present evidence of their inability to pay

the judgment in full and show that they had never had the cash or assets from which they could have satisfied the judgment.  The request was granted and the hearing was held on October 30, 2015.  In advance, defendants submitted evidence intended to show that on September 1, 2015, defendant Properties executed a promissory note and security in favor of Rice Lake Harley-Davidson for $12,000, and that it entered into a "Control of Deposit Account Agreement," whereby defendant Properties purported to grant control of the Dairy State Bank account to Rice Lake.  Plaintiff never received copies of these documents until October 15, 2015, when defendant Properties filed them in connection with its objection to plaintiff's attempt to garnish the Dairy State Bank account.  Vasichek Decl., dkt. #304; Schwartz Aff., dkt. #301, exh. A.

Sometime in August and September 2015, defendant Properties entered into agreements with third-party buyers to sell real estate and personal property.  Vasichek Decl., dkt. #304, exhs. C and D.


OPINION

Contrary to defendants' assertion that they would use the October 30, 2015 hearing to establish "EEOC's allegations and misstatements" and prove that they had never had the resources to pay plaintiff's judgment in full, the evidence adduced at the hearing was more than sufficient to support the writ of continuing garnishment directed to Dairy State Bank that plaintiff has requested.  In opposition to the writ, defendants' only defense was defendant Properties' assertion that the funds belong to Rice Lake

6

Harley-Davidson.  Even if defendant Properties had not been dissolved in September, it would have had no standing to assert the rights of a separate corporation, unless, of course, it is one corporation with Rice Lake and the other entities controlled by Christopher Brekken.  However, the issue of defendant Properties' standing is immaterial because plaintiff has the stronger claim to the funds, no matter which of the Brekken corporations asserts an interest in them.

Under the Federal Priority Statute, 31 U.S.C. § 3713(a)(i), plaintiff stands first in line for the money in the Dairy State Bank account because it is an agency of the United States.  Under this statute, the federal government is to be paid first when a person indebted to the government is insolvent and "without enough property to pay all debts makes a voluntary assignment of property."  Defendants have maintained consistently that they are without property to satisfy plaintiff's judgment, despite making repeated voluntary assignments of property in violation of the statute.  Defendant Properties advised plaintiff on September 23, 2015, under oath, that it had no bank accounts of any kind, yet by October 14, 2015, its account showed a balance of $14,908.18.  This was well after plaintiff had registered its judgment in Dunn County, Wisconsin (February 25, 2014), Vasichek Decl., dkt. #304, exh. 4, and had satisfied all the requirements of 28 U.S.C. §§ 3202 (enforcement of judgments) and 3205 (garnishment) with respect to its judgment.

By its own repeated admissions, defendant Properties was indebted to plaintiff and insolvent when it transferred the proceeds of a sale of personal property to Anchor Bank

to pay off a mortgage secured by defendant Properties' real estate and personal property. (This was not the first time that one of the defendants paid other creditors before paying plaintiff; in July 2015, defendant Holdings "defaulted" on the rent it was paying defendant Properties and transferred all its assets to defendant Properties.  Vashichek Decl, dkt. ?, exh. B.) It is not clear whether the source of the funds in the Dairy State Bank is, as defendants' counsel argues, "an infusion of cash" deposited by Rice Lake Harley-Davidson for defendant Properties' use, which is a proposition that makes no sense in view of defendant Properties' prior dissolution, or whether the funds have another source.  In either circumstance, plaintiff is entitled to the funds because they were deposited in a bank account in defendant Properties' name at a time when defendant was insolvent and owed money to plaintiff.  Even if defendant Properties had not been dissolved sometime after September 23, 2015, it could not show an interest prior to plaintiff's.

I note defendants' representation in dkt. #291 that they sold real and personal property to unrelated third-parties, that none of their creditors had been paid from the proceeds, except Anchor Bank, which held a first priority mortgage on the property before this action was filed, and that Rice Lake Harley-Davidson would not receive any payment from the sale of assets.  Id. at 2.  The accuracy of this representation seems questionable in light of Rice Lake Harley-Davidson's recent infusion of cash into the Dairy State Bank account, but it is not necessary to resolve the issue.  Unless defendants can prove that they conveyed personal property that had been identified specifically in the mortgage, they are

wrong when they say they had no obligation to pay the proceeds of their sale of personal property to plaintiff. Unless they can prove that Anchor Bank had a "choate lien" to the personal property, its interest would not take priority over plaintiff's judgment. United States v. City of New Britain, Conn., 347 U.S. 81, 84 (1954) ("choate lien" is one in which the identity of the lienor, the property subject to the lien and the amount of the lien are established). As a general rule, a lien does not attach to items of personal property unless the items are identified specifically. Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 372-23 (1946) (state government's foreclosure on lien secured by personal property did not take priority over federal government's claim for unpaid unemployment taxes because state lien did not attach to specific property of debtor); United States v. Waddill, Holland & Flinn, 323 U.S. 353, 358 (1945) (United States' claim for unpaid federal unemployment taxes had priority over law firm's claim for unpaid rent despite firm's levy on renter's personal property because personal property not sufficiently specified and perfected). Defendants have not made that showing.

Although it appears that this is a situation in which Chistopher Brekken can be held liable personally, I will not enter such an order today. Plaintiff did not assert its intention to hold Brekken responsible for the unpaid portion of the judgment until just before the October 30 hearing and it is fair to give Brekken an opportunity to be heard before the order is entered.

Plaintiff bases its claim against Brekken on 31 U.S.C. § 3713(b), which provides that "[a] representative of a person or an estate . . . paying any part of a debt of the person

9

or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government."  Section 3713(b) of the statute has been read to require that the representative have knowledge of the debt owed to the United States and that the corporation be insolvent when the defendant paid the other debts.  United States v. Renda, 709 F.3d 472, 480 (5th Cir. 2013)(§ 3713(b) makes "a representative who pays a non-federal debt on behalf of a corporation before paying a federal claim personally liable for the amount paid") (citing United States v. Coppola, 85 F.3d 1015, 1020) (2d Cir. 1996)).

It is likely that Brekken would be found liable under § 3713(b) for the remainder of plaintiff's judgment.  Defendants were insolvent at the time he or the corporations of which he was the sole shareholder paid Anchor Bank the balance of the mortgage secured by defendants' personal property.   It is improbable that as the sole shareholder, he did not know of defendants' debt to plaintiff before he made the payment to Anchor Bank.  However, Brekken has not had an adequate opportunity to be heard on plaintiff's motion for entry of an award of unpaid damages against him personally.  Dkt. #313.  I will give him an opportunity to brief the issue.


ORDER

IT IS ORDERED that

1. Plaintiff Equal Employment Opportunity Commission's motion for entry of an order granting final disposition of writs of garnishment directed to garnishee defendants

10

Central Bank and Dairy State Bank is GRANTED; garnishee defendants Central Bank and Dairy State Bank are to mail remittances payable by check or money order to the Clerk of Court for the Western District of Wisconsin, 215 North Henry Street, Madison, WI 53703; and

2. Christopher Brekken may have until December 3, 2015 to file a response to plaintiff's motion, dkt. #313, to hold him responsible as the sole shareholder of the defendant corporations, Northern Star Hospitality, d/b/a Sparx Restaurant, Northern Star Properties, LLC and North Broadway Holdings, Inc., for the unpaid portion of the judgment awarded to plaintiff in this case on January 25, 2014, together with interest, costs and penalties.  Plaintiff may have until December 14, 2015 to file a reply.

Entered this 13th day of November, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge